IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLAINE OTIS BIDDINGS, ) | |
| ) | Civil Action No. 14 – 22 |
| Petitioner, ) | |
| ) | |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| JOHN E. WETZEL, *Pennsylvania* ) | |
| *Department of Corrections;* ) | |
| *Superintendent of the State* ) | |
| *Correctional Institution at Benner,* ) | |
| ) | |
| Respondent. ) | |
| ) | |

## MEMORANDUM OPINION

Petitioner Blaine Otis Biddings ("Petitioner") has filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (ECF No. 3) seeking relief from his judgment of sentence imposed for drug and Motor Vehicle offenses, which was entered on July 23, 2009 in the Court of Common Pleas of Allegheny County, Pennsylvania. For the following reasons, the Petition will be denied.

**A. Facts of the Crime**

The Superior Court of Pennsylvania summarized the facts as follows:

> At approximately 2:15 a.m. on the morning in question [September 17, 2008], Mount Oliver Police Officer Josh Dobbin observed a Ford Fusion make a U-turn across a double yellow line in the 300 block of Brownsville Road, Mount Oliver. That officer believed that he had witnessed a violation of two provisions of the Motor Vehicle Code, limitations on turning around, 75 Pa.C.S. § 3332, and obedience to traffic control devices, 75 Pa.C.S. § 3111(a). Officer Dobbin stopped the car, which was occupied solely by Appellant, and asked for Appellant's driver's license and car registration. Appellant produced a photographic identification. Officer Dobbin discovered that Appellant's driver's

1

> license was suspended and his identification was inactive. Since Appellant was not permitted to operate the vehicle and since it was not in a legal parking space, Officer Dobbin, acting in accordance with Mount Oliver's written inventory policy, conducted an inventory search of the car in order to have it towed. He discovered 293.2 grams of crack cocaine, a digital scale with white residue on it, and two plastic bags. Appellant was arrested, and had $2,725 on his person.

(Resp't Ex. 19, ECF No. 13-8 at pp.1-3) (footnotes omitted).

### B. Relevant Procedural Background

Petitioner was charged by Criminal Information filed on January 21, 2009, with the following offenses: Possession with intent to deliver (crack cocaine), 35 P.S. § 780-113(a)(30); Possession (crack cocaine), 35 P.S. § 780-113(a)(16); Possession of drug paraphernalia, 25 P.S. § 780-113(a)(32); and with summary counts of Driving While Operating License Suspended/Revoked, 75 Pa.C.S.A. § 1543(a); Driving Without a License, 75 Pa.C.S.A. § 1501(a); Obedience to Traffic Control Devices, 75 Pa. C.S.A. § 3111(a); and Limitations on Turning Around, 75 Pa.C.S.A. § 3332(a). (Resp't Ex. 1, ECF No. 13-1 at pp.1-13.)

Counsel for Petitioner, James Joseph Walsh, Esquire, filed a Motion to Suppress on April 24, 2009. (Resp't Ex. 2, ECF No. 13-1 at pp.14-19.) On April 28, 2009, a hearing was held on the motion before Judge Durkin, and at which time Attorney Walsh represented Petitioner and Assistant District Attorney ("ADA") Lawrence Sachs represented the Commonwealth. At the end of the hearing, Judge Durkin denied the Motion to Suppress. (SH 21-22.)

On May 5, 2009, Petitioner, with Attorney Walsh, waived his right to a jury trial and proceeded non-jury. (NT 3-9.) ADA Sachs appeared for the Commonwealth. Judge Durkin granted Petitioner's motion for judgment of acquittal on the summary count of Limitations on Turning Around, 75 Pa.C.S.A. § 3332(a). (NT 30.) Petitioner was found guilty of all the remaining charges except the summary count of Obedience to Traffic Control Devices, 75

Pa.C.S.A. § 3111(a). (NT 45-46.) The Commonwealth invoked the four year mandatory minimum sentence of incarceration pursuant to 18 Pa.C.S.A. § 7508(a)(iii) as 293.2 grams of crack cocaine was involved. (NT 46-47.) Sentencing was deferred for the preparation of a presentence report.

On July 23, 2009, Petitioner appeared for sentencing. A Guideline Sentence form was completed and was submitted to the court. Petitioner was sentenced at count 1, Possession with intent to deliver, to five to ten years of incarceration. (ST 11.) At count 4, Driving while suspended, Petitioner was fined $200.00. (ST 11.) No further penalty was imposed at the remaining counts. (ST 11.) At the end of his sentencing hearing, Petitioner handed the trial court a *pro se* Motion for Post Sentence Relief he wanted to have filed, but that Motion was not filed in the Office of Court Records until December 10, 2009. (ST 15-17.)

New counsel, Christy P. Foreman, Esquire, filed timely Amended Post-Sentence Motions on July 29, 2009. On December 11, 2009, these motions were denied by operation of law pursuant to Pa. R. Crim. P. 720(B)(3)(b).

On January 5, 2010, Attorney Foreman filed a timely Notice of Appeal to the Pennsylvania Superior Court, which was docketed at No. 40 WDA 2010. (Resp't Ex. 3, ECF No. 13-1 at p.20; Ex. 4, ECF No. 13-1 at pp.21-24.) Pursuant to a January 14, 2012, Order of Court, she filed a timely Statement of Errors Complained of on Appeal on February 4, 2010. On February 25, 2010, Judge Durkin issued her Pa. R.A.P. 1925(a) Opinion. (Resp't Ex. 5, ECF No. 13-1 at pp.25-32.) Petitioner, through counsel, then filed a brief to the Superior Court on August 26, 2010. (Resp't Ex. 6, ECF No. 13-2.) On May 11, 2011, a panel of the Superior Court affirmed Petitioner's judgment of sentence. (Resp't Ex. 7, ECF No. 13-3.)

On June 10, 2011, Attorney Foreman filed a Petition for Allowance of Appeal ("PAA") in the Supreme Court of Pennsylvania, which was docketed at No. 298 WA:L 2011, and raised the same issues raised in the August 26, 2010 brief to the Superior Court. (Resp't Ex. 8, ECF No. 13-4; Ex.9, ECF No. 13-5 at pp.1-3.) The Pennsylvania Supreme Court denied the PAA on November 30, 2011. (Resp't Ex. 10, ECF No. 13-5 at p.4.)

On December 13, 2011, Petitioner filed a *pro se* Post Conviction Relief Act ("PCRA") petition. William C. Kaczynski, Esquire, was appointed to represent him in connection with this petition and filed an Amended Petition on May 29, 2012. (Resp't Ex. 11, ECF No. 13-5 at pp.5-21.) The Commonwealth filed its Answer on August 24, 2012, and Judge Durkin sent Notice of Intent to Dismiss the PCRA petition on August 31, 2012. (Resp't Ex. 12, ECF No. 13-5 at p.22.) The petition was then dismissed by Order of Court filed September 28, 2012. (Resp't Ex. 14, ECF No. 13-5 at p.31.)

Attorney Kaczynski filed a Notice of Appeal to the Superior Court on October 4, 2012, which was docketed at No. 1528 WDA 2012. (Res't Ex. 15, ECF No. 13-6 at pp.1-2; Ex. 16, ECF No. 13-6 at pp.3-5.) Attorney Kaczynski filed a Concise Statement on November 13, 2012, and Judge Durkin's Opinion followed on December 12, 2012. (Resp't Ex. 17, ECF No. 13-6 at pp.6-12.) Petitioner, through counsel, then filed a brief to the Superior Court on February 19, 2013. (Resp't Ex. 18, ECF No. 13-7.) On May 20, 2013, a panel of the Pennsylvania Superior Court affirmed the PCRA court's order denying Petitioner's PCRA petition for relief. (Resp't Ex. 19, ECF No. 13-8 at pp.1-11.)

On June 17, 2013, Petitioner filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania, which was docketed at 285 WAL 2013. (Resp't Ex. 20, ECF No. 13-8 at

pp.12-14.) The court denied the PAA on December 4, 2013. (Resp't Ex. 22, ECF No. 13-8 at p.46.)

Petitioner then filed his Petition for Writ of Habeas Corpus with this Court on January 8, 2014. (ECF No. 3.) The Commonwealth responded on March 24, 2014. (ECF No. 13.)

### C. Federal Habeas Corpus Standard

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue. *See* 28 U.S.C. § 2254(d) and (e). In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d). In <u>Williams</u>, the Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: (1) where the State court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or (2) where the State court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05. The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. The Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the

5

petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000) (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999) (*en banc*)). Moreover, the "unreasonable application" test is an objective one; "a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005) (citation omitted). It is Petitioner's burden to prove the State court decision is either contrary to or an unreasonable application of clearly established Federal law. *See* Matteo, 171 F.3d at 888; Werts, 228 F.3d at 197.

AEDPA also permits federal habeas relief where the State court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Section 2254(d)(2) mandates the federal habeas court to assess whether the state court's determination was reasonable or unreasonable given that evidence. If the state court's decision based on such a determination is unreasonable in light of the evidence presented in the state court proceeding, habeas relief is warranted. Within this overarching standard, of course, a petitioner may attack specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision. Here, section 2254(e)(1) comes into play, instructing that the state court's determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence. Lambert v. Blackwell, 387 F.3d 210, 235 (3d Cir. 2004).

**D. Discussion**

Petitioner raises two claims in his Petition, both of which are ineffective assistance of counsel claims. First, he claims that his trial counsel was ineffective for failing to "properly and specifically assert lack of probable cause for the vehicle stop," and, second, that his trial counsel

was ineffective for failing to "properly support petitioner's suppression motion with available testimony and legal authority establishing a possessory interest and expectation of privacy in the vehicle." (ECF No. 4 at pp. 13, 33.)

Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984)." Shelton v. Carroll, 464 F.3d 423, 438 (3d Cir. 2006) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003)). For AEDPA purposes, the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court." Williams v. Taylor, 529 U.S. 362, 391 (2000). Under Strickland, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

With respect to the sequence of the two prongs, the Strickland Court held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697. In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding . . . . In every case the court should be concerned with whether . . . the result of the

particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Id. at 696.

### 1. **Petitioner's claims**

Because the state courts rejected each of Petitioner's ineffective assistance of counsel claims on the merits, this Court must review them under AEDPA's standard of review, which is set forth at 28 U.S.C. § 2254 and in section C, *supra*.

Under AEDPA, review is to proceed as follows.

> . . . . "[W]e must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim." *Id.* (citing *Matteo,* 171 F.3d at 888). To do so, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Id.* (quoting *Matteo,* 171 F.3d at 888). "If we determine that the state court decision is not 'contrary to' the applicable Supreme Court precedent, then we are required to advance to the second step in the analysis- whether the state court decision was based on an 'unreasonable application of' Supreme Court precedent." *Id.* (citing *Matteo,* 171 F.3d at 888). In performing this inquiry, "we are not authorized to grant habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices." *Id.* (citing *Matteo,* 171 F.3d at 889). Rather, the state court's application of Supreme Court precedent must have been "objectively unreasonable," *i.e.,* "[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* (quoting *Matteo,* 171 F.3d at 890); *see also Price v. Vincent,* 538 U.S. 634, 636, 643, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003) (unanimously reversing a decision to grant habeas relief as "exceed[ing] the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)" because "[e]ven if we agreed with the Court of Appeals that the Double Jeopardy Clause should be read to prevent continued prosecution of a defendant under these circumstances, it was at least reasonable for the state court to conclude otherwise.").

Hackett v. Price, 381 F.3d 281 (3d Cir. 2004) (citing Werts, 228 F.3d at 196-97).

First, the "clearly established Federal law" in which to analyze Petitioner's ineffective assistance claims is set forth in Strickland, *supra*, and the state courts applied this standard to

each of Petitioner's ineffectiveness claims.[1]  With regard to the first inquiry under AEDPA, Petitioner has not demonstrated that Strickland "requires the contrary outcome" with respect to either of his ineffectiveness claims, and therefore, the state courts' adjudication of these claims was not "contrary to" Strickland.  *See also* Werts, 228 F.3d at 202-04 ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent.").

The dipositive question, then, is whether the state courts' adjudication of Petitioner's ineffective assistance of counsel claims was an "unreasonable application" of Strickland.  It was not.  In order to overcome AEDPA's standard of review, Petitioner must show that the state courts' decision "cannot reasonably be justified under existing Supreme Court precedent[,]" Matteo, 171 F.3d at 890, and, for the reasons stated in relation to each of his ineffective assistance of counsel claims *infra*, he falls far short of meeting this burden.

### a. Lack of probable cause for the vehicle stop

First, Petitioner asserts that his trial counsel provided ineffective assistance of counsel when he failed to "properly and specifically assert lack of probable cause for the stop of the vehicle." (ECF No. 4 at p.13.)  On appeal from the PCRA court's denial of this claim, the Superior Court found as follows:

> Appellant first assails suppression counsel's ineffectiveness for failing to properly present Appellant's position that Officer Dobbin lacked a probable cause to believe that Appellant had violated the Motor Vehicle Code and thus, unconstitutionally stopped the car.  However, our review of the suppression

---

[1] Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims, and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.  *See* Werts, 228 F.3d at 202–03.

> hearing establishes that counsel did present evidence and argue the position that Appellant's stop was not supported by a belief that a violation of the Motor Vehicle Code had occurred. As noted, Officer Dobbin stopped the Ford Fusion based on his conclusion that Appellant made an illegal U-turn. Suppression counsel cross-examined the police officer about the existence of oncoming traffic, a curve, and a grade in the vicinity of the turn. N.T. Suppression Hearing, 4/28/09, at 7-8. Counsel also argued that Appellant's U-turn was not illegal and that the car was unconstitutionally stopped. Id. at 17. As noted, the suppression court rejected that position and concluded that Officer Dobbin had grounds to believe that Appellant had made an improper U-turn. Despite Appellant's protests to the contrary, counsel at the suppression hearing did present the issue that Appellant claims he did not. The suppression court, according to our prior opinion, did not render the correct ruling; however, the fact that an improper ruling resulted from a correct legal position does not render counsel ineffective. Hence, we must reject Appellant's first position.

(Resp't Ex. 19, ECF No. 13-8 at pp.7-8.)

In his Petition, Petitioner argues that counsel was ineffective for failing to "properly and specifically" assert a proper basis for lack of probable cause to *stop* the vehicle; instead, he focused only on lack of probable cause for the *search*. Despite Petitioner's disagreement, and interpretation of the attorneys' arguments made in the hearing on the motion to suppress, this is simply incorrect. A review of the record reveals that trial counsel argued in the motion to suppress, and at the hearing on the motion to suppress, that Petitioner had not made an illegal U-turn under 75 Pa.C.S.A. § 3332(a), and that, therefore, he had been "illegally seized."

> MR. WALSH: Yes, Your Honor. In this situation, we have an individual that is pulled over. In order for a U-turn to be illegal, it must interfere with the safety of oncoming traffic, hill or a crest of grade here near you or a turn near you. According to the Officer, there was no hill, no turn, and it did not interfere with the safety of the other vehicle. At that time my client was illegally arrested based on illegal seizure.

(SH 17.) While the Superior Court acknowledged that trial counsel was actually correct in his legal position, and the suppression court was incorrect in finding that the Officer "acted appropriately in stopping the [Petitioner]'s vehicle based on the [Petitioner]'s actions," (SH 21),

10

the suppression court's rejection of trial counsel's legal argument does not render counsel ineffective even if that legal position is ultimately determined to be correct on appeal. Despite Petitioner's desire to have had counsel phrase his argument in a more precise and effective manner believing that it would have persuaded the court to rule differently, counsel put the issue before the suppression court that Petitioner claims was not argued. Based on the testimony elicited in the suppression hearing, it was clear that counsel was challenging the legality of the stop itself in addition to the search of the vehicle.[2] The argument was considered and rejected. The very fact that counsel was later vindicated is evidence of his effective assistance. Petitioner has simply not demonstrated that the state courts' application of the ineffective assistance of

---

[2] On cross-examination of Officer Dobbin, Petitioner's trial counsel supported the "illegal stop" argument in the Motion to Suppress by eliciting testimony that there was "light traffic" on the road when Petitioner made the U-turn, that the officer could not recall if the U-turn affected that traffic, and that there was not a hill on the road at that point, but a grade. (SH 7-8.) When trial counsel asked Officer Dobbin if there were "any turns on the Brownsville Road in the immediate area" he answered, "In the 400 block, yes." (SH 8.) Officer Dobbin agreed that at the time of the inventory search, Petitioner was charged with only the illegal U-turn and driving without a license offenses.

Petitioner then testified on his own behalf at the suppression hearing, and trial counsel supported the suppression motion by eliciting testimony from Petitioner that there was no traffic around when Petitioner made the U-turn and no hill or grade on the roadway. (SH 10.) Petitioner further stated on direct examination that he was already out of the car and getting ready to go into a store when the officer told him to get back in the car. (SH 10-11.)

On cross-examination, Petitioner stated that when the officer told him to get back into the car he asked "why," since he believed that he had done nothing wrong. (SH 14.) Shown a photograph of the roadway, Petitioner stated that he could see the double yellow lines, but testified that he did not notice them on the night he was stopped. (SH 14.) Asked if he knew that he was not to cross a double yellow line, Petitioner stated that it was his understanding that if no sign was posted, it was not illegal to make a U-turn. (SH 15.)

Arguing to the court after the presentation of testimony, trial counsel stated that it had not been demonstrated that Petitioner had made an illegal U-turn and that consequently Petitioner "was illegally arrested based on the illegal seizure." (SH 17.) ADA Sachs argued on behalf of the Commonwealth that Petitioner made a U-turn and crossed double yellow lines, which was an illegal traffic maneuver for which the officer was entitled to make a stop. (SH 18.)

11

counsel standard was "objectively unreasonable" – *i.e.*, that it cannot reasonably be justified under the Strickland standard – or that the Superior Court's conclusion was based on an unreasonably determination of the facts. *See* 28 U.S.C. § 2254(d). As such, Petitioner is not entitled to habeas relief on this claim.

### b. Expectation of privacy in the vehicle

Second, Petitioner asserts that his trial counsel was ineffective when he failed to establish that Petitioner had a possessory interest and expectation of privacy in the vehicle. (ECF No. 4 at p.33.) On direct appeal, the Superior Court explained why Petitioner's suppression motion was unsuccessful:

> Pennsylvania Rule of Criminal Procedure 581(H) provides that the Commonwealth bears "the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H). To prevail on a suppression motion, however, a defendant must establish he has standing to challenge the admission of evidence, and "separately demonstrate a personal privacy interest in the area searched or effects seized, and that such interest was 'actual, societally sanctioned as reasonable, and justifiable.'" *Commonwealth v. Millner*, 888 A.2d 680, 691 (Pa 2005) (citation omitted).
>
> Here, Appellant was charged with possession of a controlled substance and possession with intent to deliver a controlled substance.
>
>> [U]nder Article I, Section 8 of the Pennsylvania Constitution, a criminal defendant charged with a possessory offense has "automatic standing" to pursue a motion to suppress evidence where that evidence (most typically, contraband or firearms) forms the very basis for the possessory crime, and the claim is that the evidence was the fruit of an unlawful seizure.
>
> *Id*. at 689 (citing *Commonwealth v. Sell*, 470 A.2d 457 (Pa. 1983)).
>
> However, "automatic standing holding [does] not absolve the suppression defendant of his obligation to demonstrate that the challenged police conduct implicated a reasonable expectation of privacy that he personally possessed." *Millner*, 888 A.2d 691. This Court has held that where a defendant did not own or have registered a vehicle, "offered no evidence that he was using the vehicle

with the authorization or permission of the registered owner" or "evidence to explain his connection to the vehicle or his connection to the registered owner of the vehicle," he has "failed to demonstrate that he had a reasonably cognizable expectation of privacy in [the] vehicle." *Commonwealth v. Maldonado*, 14 A.3d 907, ___ (Pa. Super. 2011) (quoting *Commonwealth v. Burton*, 973 A.2d 428, 436 (Pa. Super. 2009) (en banc)). This Court has also held that a defendant "had no constitutional expectation of privacy in a rental automobile, where he was the operator of the vehicle but not the named lessee, he was not an authorized driver, and the return date on the rental agreement had passed." *Commonwealth v. Jones*, 874 A.2d 108, 120 (Pa. Super. 2005).

> In the instant matter, Officer Dobbin testified at trial that the vehicle was rented from P.V. Holding Corporation, Inc., but that he, the officer, did not: know who rented the vehicle; have a copy of the rental agreement; conduct any subsequent search as to who rented the vehicle; nor fingerprint the vehicle or any other evidence. N.T. Trial, 5/5/09, at 18-19. Appellant testified that he borrowed the car from a friend, Manika Wood, who he knew from school and had met in a bar that evening when "[s]he was out with a couple guys." *Id*. at 31-32. Appellant stated that when he was stopped, the police did not inquire who owned the vehicle, but he told Officer Dobbin that the car was not his and requested permission to call the owner. *Id*. at 35. He stated that although Officer Dobbin was aware he had a cell phone, "[h]e would not let [him] get on the phone, make no phone calls to try to get the person's car [sic], he did not care." *Id*.

> Appellant did not call Wood, from whom he purportedly borrowed the car, to testify that she had given him permission to drive her car on the day in question. He also did not proffer any evidence regarding his connection to the rented vehicle or to the lessee of the vehicle, other than to assert he had borrowed a car from his friend, Wood. Appellant made no attempt at the suppression hearing, and does not argue in this appeal, that permission to use a rented vehicle provides him a reasonable expectation of privacy in that vehicle. Accordingly, pursuant to *Maldonado*, *supra*, and *Jones*, *supra*, we hold he did not meet his burden to demonstrate a legitimate expectation of privacy in the rented car which society would sanction as reasonable. *See Millner*, *supra*. We therefore affirm the court's order denying Appellant's suppression motion, albeit for reasons other than those posited by the trial court. *See Commonwealth v. Johnson*, 941 A.2d 1286, 1290 n.2 (Pa Super. 2008).

(Resp't Ex. 7, ECF No. 13-3 at pp.13-15.)

Petitioner's current claim is that his trial counsel provided ineffective assistance when he failed to establish at the suppression hearing that Petitioner had a possessory interest and

expectation of privacy in the rented vehicle. The Superior Court addressed this claim on collateral review and found that it was also meritless.

> We conclude that Appellant's proffer as to suppression counsel's ineffectiveness is insufficient. To be entitled to PCRA relief, a PCRA petition must plead and prove by a preponderance of the evidence that he is entitled to PCRA relief. 42 Pa.C.S. § 9543(a). In this case, suppression counsel would have needed to present testimony from Manika Wood to establish that she had the right to and did grant Appellant permission to utilize the Ford Fusion. "Where a claim is made of counsel's ineffectiveness for failing to call witnesses, it is the appellant's burden to show that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011).

(Resp't Ex. 19, ECF No. 13-8 at p.9.) The Superior Court then went on to apply this standard of review to the merits of Petitioner's claim and held that counsel was not ineffective for failing to establish a possessory interest or expectation of privacy in the rented vehicle because:

> In his PCRA petition, Appellant did not allege any of the following: Manika Wood existed, was available, was willing and able to appear, would have testified that she rented the car and gave Appellant permission to use it. Appellant also did not aver that suppression counsel was or had a duty to be aware of her existence. Indeed, in his Amended PCRA petition, Appellant included a certification as to witnesses whom he intended to present at the PCRA hearing, but he did not include the name of Manika Wood. Similarly, on appeal, while Appellant makes the generalized argument that the suppression counsel should have established his reasonable expectation of privacy in the car, Appellant provides this Court with no indication as to how suppression counsel could have done so. Hence this position also fails.

(Resp't Ex. 19, ECF No. 13-8 at pp.9-10.)

The record supports the Superior Court's conclusion that Petitioner could not have demonstrated a reasonable expectation of privacy in the vehicle and that, therefore, there is no underlying merit to his claim that his trial counsel was ineffective for having failed to argue otherwise. Petitioner failed to prove at trial or to the PCRA court that he was authorized to

14

operate the vehicle by the true owner of the car, did not offer any evidence that he was a registered user appearing on the rental agreement of the rental car, and did not assert to the PCRA court that he could produce that information.  He also did not make an offer to the PCRA court indicating that he could produce testimony from Manika Wood, whom he claims gave him the keys to the rental car.  Accordingly, Petitioner failed to demonstrate to the PCRA court that there was any available testimony overlooked by trial counsel which would have proven that he had a reasonable expectation of privacy in the rental car.  Petitioner has failed to establish that the Superior Court's resolution of this ineffective assistance claim was an unreasonable application of Strickland, or an unreasonable determination of the facts in light of the evidence presented.  See 28 U.S.C. § 2254(d).  As such, it will be denied.

### E.  Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  Applying that standard here, a certificate of appealability will be denied.  A separate Order will issue.

Dated:  April 29, 2016.

_____
Lisa Pupo Lenihan
United States Magistrate Judge


cc:  Blaine Otis Biddings
    ML7345
    301 Institution Dr.
    Bellefonte, PA  16823

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BLAINE OTIS BIDDINGS, | ) | |
| | ) | Civil Action No. 14 – 22 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| JOHN E. WETZEL, *Pennsylvania Department of Corrections; Superintendent of the State Correctional Institution at Benner,* | ) ) ) ) | |
| | ) | |
| Respondent. | ) ) | |

## ORDER

**AND NOW**, this 29th day of April, 2016, **IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 3) is **DENIED.**

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

cc: Blaine Otis Biddings
ML7345
301 Institution Dr.
Bellefonte, PA 16823